UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAIAH GARONE,<br>Plaintiff,<br>v.<br>GLADYS MENCIAS,<br>Defendant.[1] | No. 2:22-cv-2310 DAD CSK P<br><br>FINDINGS & RECOMMENDATIONS |

Plaintiff is a former county jail inmate proceeding pro se in an action brought under 42 U.S.C. § 1983. This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. Defendant's motion for summary judgment is before the Court. As discussed below, the Court recommends that the motion for summary judgment be granted.

I. PLAINTIFF'S FIRST AMENDED COMPLAINT

In his verified first amended complaint, plaintiff alleges that in the middle of 2022, he began having a lot of pain in, and had trouble breathing from, his left nostril. (ECF No. 8 at 3.) Plaintiff avers that despite being scheduled for two outside ENT appointments, both appointments

[1] Pursuant to plaintiff's election, plaintiff consented to dismissal without prejudice of plaintiff's Fourteenth Amendment claim against defendant Mencias based on medical treatment for plaintiff's right knee, and that claim was dismissed on February 25, 2025. (ECF Nos. 28, 29.)

were cancelled without notice to plaintiff. Plaintiff alleges that both times the John Doe nurse told plaintiff the appointment was cancelled for "unknown reasons." (Id. at 3-4.) The John Doe nurse told plaintiff that defendant Mencias is responsible for scheduling outside doctor appointments. Plaintiff believes defendant cancelled the appointments for unknown reasons, despite plaintiff's multiple kites and grievances to defendant explaining about plaintiff's breathing troubles and pain getting worse. Plaintiff states that if medical staff was properly trained, made aware of medical protocol and supervised by defendant, plaintiff believes this would not have occurred. (Id. at 3.) Plaintiff adds that to his knowledge, defendant is the "lead supervising nurse" "in charge of reviewing medical grievances, scheduling outside doctor appointments, making sure her staff is properly trained and supervised to ensure all medical matters are done in a professional and timely manner." (Id. at 5.)

## II. LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).) "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). A verified complaint may be considered as evidence at the summary judgment

stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed on October 24, 2025, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 35 (citing Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988); Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc).).

III. UNDISPUTED MATERIAL FACTS ("UDF")

For purposes of summary judgment, the undersigned finds these facts are undisputed.

1. Plaintiff Isaiah Garone ("plaintiff") was a pretrial detainee housed at the Rio Cosumnes Correctional Center ("RCCC") during the incidents herein. (ECF No. 8 at 1 (amended complaint); ECF No. 35-3 at 4 (plaintiff sentenced on June 20, 2023).)
2. Defendant Gladys Mencias ("defendant") was the health program coordinator at the Sacramento County Jail during the relevant time period. (ECF No. 35-4 at ¶¶ 1-2 (Def. Decl.)
3. Plaintiff began feeling pain in his left nostril, and some difficulty breathing out of it, and he also noticed what looked to him like white cartilage beginning in "mid 2022." (ECF No. 39 at 6 (UDF 2).)
4. On June 20, 2022, plaintiff was seen by Dr. Masood, who diagnosed nasal cartilage

inflammation/separation, and an ENT consultation was placed. (UDF 4.)

5. While the ENT referral remained pending, imaging was ordered, and on October 6, 2022, the radiologist reported that plaintiff's nasal bones were intact and normal, and the paranasal sinuses were well-aerated without evidence of air fluid level. (UDF 8.)

6. On October 7, 2022, according to a case management note by LVN Kathryn Gonzales, a request for an appointment was placed to San Joaquin General ENT Clinic, and plaintiff's medical profile was sent. (UDF 9.)

7. The ENT referral was noted as still pending on December 13, 2022, and December 27, 2022. (UDF 11, 14.)

8. On January 18, 2023, Dr. Masood reviewed plaintiff's chart and medications after plaintiff reportedly returned from another facility after evacuating from flooding, and noted they were ordered as appropriate. (UDF 16.)

9. On February 17, 2023, RN Patience Ukattah informed plaintiff about the ENT appointment being rescheduled. (UDF 17.) He continued to be reassured about the ENT consultation. (Id.) A February 21, 2023 note by RN Alena Petrovskaya confirms the ENT consultation at San Joaquin General Hospital was in progress. (UDF 18.)

10. On April 18, 2023, plaintiff was seen by ENT specialist, Dr. Alexander Ierokomos at San Joaquin General Hospital. (UDF 20.)

11. Plaintiff admits that defendant did not treat, see, or otherwise evaluate plaintiff for his medical needs. (UDF 29 (Plaintiff referred to 28).[2])

IV. THE PARTIES' EVIDENCE

A. Defendant provided the following evidence:

1. Expert medical opinion of David Keiner, M.D., who is board certified in otolaryngology and facial plastic reconstructive surgery. (ECF No. 35-4 at 143 (Dr.

---

[2] Defendant's statement of undisputed facts is missing No. 23 (ECF No. 35-2 at 5.) Plaintiff continued numbering the facts in numerical order, which is why the numbering discrepancy starts at UDF 23 (ECF No. 39 at 14).

Keiner Decl.).)

2. Declaration of defendant Gladys Mencias. (Id. at 150 (Def. Decl.).)

3. Plaintiff's authenticated medical records subpoenaed from the County of Sacramento. (Id. at 4-141.)

B. Plaintiff provided the following evidence:

1. Declaration of Zoe Antonelli. (ECF No. 39 at 22-24.)

2. Declaration of Timothy Garone. (Id. at 25-28.)

3. Declaration of Mitchell Ferrua. (Id. at 29-31.)

4. Plaintiff's Declaration. (Id. at 32-34.)

5. Copies of plaintiff's medical records. (Id. at 49-184.)

6. Health program coordinator job description. (Id. at 35-39.)

7. Consent for Medical Care. (Id. at 40-41.)

8. Summary from ENT consultation. (Id. at 42-48.)

V. LEGAL STANDARDS GOVERNING MEDICAL CARE

"Pretrial detainees have a constitutional right to adequate medical care while in the custody of the government and awaiting trial." Est. of Nelson v. Chelan Cnty., 2024 WL 1705923, at *9 (E.D. Wash. Apr. 19, 2024) (citing Russell v. Lumitap, 31 F.4th 729, 738 (9th Cir. 2022)). The claim is evaluated under an objective indifference standard. Gordon v. Cnty. of Orange, 888 F.3d 1118, 1120, 1124-25 (9th Cir. 2018). To prevail on a Fourteenth Amendment claim that a jail official was objectively indifferent to a pretrial detainee's safety or health, the detainee must show that (1) the prison official made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) those conditions put the pretrial detainee at substantial risk of suffering serious harm; (3) the prison official did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the prison official's conduct obvious; and (4) by not taking such measures, the prison official caused the pretrial detainee's injuries. Id. at 1125.

For the third element, the defendant's conduct must be objectively unreasonable, "a test

that will necessarily turn[ ] on the facts and circumstances of each particular case." Id. (citations and internal quotation marks omitted). The four-part test articulated in Gordon requires the plaintiff to prove more than negligence, but less than subjective intent -- something akin to reckless disregard. See id. Mere negligence and a simple lack of due care do not violate the Fourteenth Amendment. See Castro v. Cnty. of Los Angeles, 833 F.3d 1060, 1071 (9th Cir. 2016); Gordon, 888 F.3d at 1125.

VI. DISCUSSION

A. No Evidence Supporting Authority Or A Duty to Intervene

In his opposition, plaintiff argues that defendant, as health program coordinator, "had a duty to intervene" but did not, and that a "defendant who is aware of delays or deficiencies . . . and fails to act is liable." (ECF No. 39 at 1, 4.) In his verified pleading, plaintiff claims that to his knowledge defendant was the lead supervising nurse who was responsible for scheduling outside doctor appointments, and cancelled plaintiff's ENT appointments. (ECF No. 8 at 3-4.) Plaintiff also claims a nurse told him that defendant was responsible for scheduling outside doctor appointments. (Id.) As health program coordinator, defendant declares she operates in an administrative capacity and did not have the authority or ability to cancel appointments and referrals, including appointments or referrals to specialists. (ECF No. 35-4 at 150-51 ¶¶ 3, 5.) Further, defendant declares that she did not witness, learn, or otherwise know about any cancellation of ENT referrals or appointments. (Id. at 151 ¶¶ 11-12.) It is undisputed that defendant did not treat, see or otherwise evaluate plaintiff for his medical needs. (UDF 28.)

As evidence, plaintiff submitted the job description for the health program coordinator. (ECF No. 39 at 36-39.) Defendant objects to this evidence as inadmissible hearsay, irrelevant and lacks foundation. (ECF No. 40 at 2.) Defendant's objections are well-taken. Nevertheless, even considering defendant's job description, the job description does not indicate that the health program coordinator was responsible for referring patients to specialists, or setting or cancelling appointments with specialists. (ECF No. 39 at 36-39.) This job description does not create a triable issue as to whether defendant had the ability to intervene in plaintiff's medical care, as argued by defendant. (ECF No. 40 at 2.)

Further, plaintiff provided four declarations, all of which defendant objects to on evidentiary grounds. (ECF Nos. 40-2 to 40-5.) Defendant's evidentiary objections are again well-taken. None of these declarants offer facts as to whether defendant had the authority to schedule or cancel appointments to specialists, to intervene in plaintiff's medical care, or to demonstrate defendant was even aware of plaintiff's medical issues and the delay in obtaining an appointment with a specialist. All four of the declarations offer inadmissible hearsay and lack foundation. In addition, the declarations of Timothy Garone, Michael Farrua, and plaintiff improperly call for legal conclusions. (ECF No. 39 at 26-34.)

Zoe Antonelli's declaration (ECF No. 39 at 24) does not make clear who she is, how or when she witnessed plaintiff's breathing at night, and her unsupported claim to have five years' experience as a medical assistant is insufficient to rebut Dr. Keiner's expert opinion.

Mitchell Ferrua worked in the medical housing unit at RCCC from about June to September 2022, and claims he overheard "on a few separate occasions" defendant's name "being brought to" the attention of inmates and nurses, claimed she "was of the supervising role and she was to blame for certain delays and inquiries." (ECF No. 39 at 31.) But such vague and conclusory statements are not evidence sufficient to raise a material dispute of fact in this case.

Declarant Timothy Garone also worked in the RCCC medical housing unit, from 2020 to 2023, during which time he saw "a great amount of neglect," and heard on multiple occasions that "Gladys Mencias by name was to blame for this negligence occurrence[sic]." (ECF No. 39 at 26.) Such generalized observations and speculation are insufficient. In addition, Timothy Garone states that he overheard an unidentified nurse tell plaintiff that Gladys Mencias "was to blame for these actions," and "advised the plaintiff to write a written medical grievance against Gladys Mencias, she was to ask why his specialty appointments were being canceled." (Id.) In addition to including multiple levels of hearsay, Timothy Garone's statements are similarly vague and conclusory, and absent evidence to the contrary, speculate as to defendant's responsibility in this case, and are insufficient to raise a material dispute of fact.

In his own declaration, plaintiff states that he was told by an unidentified nurse that "Mrs. Mencias the defendant was to blame for these wrong actions," and plaintiff "believe[s] Mrs.

Mencias started her negligence towards [plaintiff] after [plaintiff] started personally blaming her and grieving her." (ECF No. 39 at 34.) Again, in addition to inadmissible hearsay and lack of foundation, plaintiff's generalized referral to defendant's "wrong actions," is insufficient to demonstrate defendant made an intentional decision with respect to the conditions under which plaintiff was confined, as required under Gordon. See Gordon, 888 F.3d at 1125. In addition, mere negligence is insufficient to state a cognizable Fourteenth Amendment claim. See Castro, 833 F.3d at 1071. Plaintiff failed to provide declarations from the nurses who allegedly told Timothy Garone or plaintiff that defendant was responsible for cancelling plaintiff's ENT appointments.

Overall, the Court finds that the declarations provided by plaintiff fail to provide any material dispute of fact as to whether defendant cancelled plaintiff's appointment with an ENT specialist. The evidence provided by plaintiff fails to raise a genuine dispute of fact as to whether defendant had the authority to refer plaintiff to a specialist, that defendant had the authority to unilaterally cancel an appointment with a specialist, or that defendant was aware of any such cancellation.

B. No Evidence Showing Requisite Causal Connection

In his opposition, plaintiff also focuses on defendant's alleged supervisorial role. (ECF No. 39 at 15-16, ¶¶ 25, 26, 28.) Under § 1983, a plaintiff must demonstrate: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. See Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir. 1978). That is, plaintiff may not sue any official on the theory that the official is liable for the unconstitutional conduct of his or her subordinates. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). The requisite causal connection between a supervisor's wrongful conduct and the violation of the prisoner's constitutional rights can be

established in a number of ways, including by demonstrating that a supervisor's own culpable action or inaction in the training, supervision, or control of his subordinates was a cause of plaintiff's injury. Starr v. Baca, 652 F.3d 1202, 1208 (9th Cir. 2011).

Plaintiff contends the evidence shows that defendant was aware of plaintiff's serious medical needs and had the authority and opportunity to intervene yet failed to take reasonable action, or that at a minimum, he has identified genuine disputes of fact. (ECF No. 39 at 3.) This Court disagrees. Plaintiff provided no competent evidence that defendant was charged with supervising the medical staff or doctors who treated plaintiff for his nose-related issues.

Defendant declares that she did not cancel any ENT referrals or appointments for plaintiff that were placed by any doctor, she was not instructed to or ordered to cancel any of plaintiff's ENT referrals or appointments, and defendant did not instruct or order anyone to cancel any of plaintiff's ENT referrals or appointments. (ECF No. 35-4 at 151 ¶¶ 8-10.) Further, defendant declares that she did not know about any cancellation of ENT referrals or appointments; indeed, she declares that a review of medical records "did not reveal any outright cancellations in regard[] to [plaintiff's] ENT referral." (Id. at 151 ¶¶ 11-12.) Plaintiff points to no medical record demonstrating an ENT specialist appointment was cancelled, by defendant or anyone else. Rather, the medical records show that the referral was pending and not cancelled. (UDF 11, 14, 18.) Plaintiff provides no competent evidence rebutting defendant's statements, and points to no competent evidence that any ENT appointment was cancelled. In addition, plaintiff adduced no evidence demonstrating that defendant was responsible for the delay in plaintiff receiving an ENT appointment. Because plaintiff fails to demonstrate a causal connection between the acts or omissions of defendant and any delay in seeing an ENT specialist, and the medical records do not confirm an ENT appointment was cancelled, defendant is entitled to summary judgment.

In his verified amended complaint, plaintiff claims he wrote "many kites and grievances to [defendant] explaining [plaintiff's] breathing troubles and pain getting worse." (ECF No. 8 at 4.) Defendant declares that as the health program coordinator, she does not receive or respond to medical grievances or kites submitted by inmates. (ECF No. 35-4 at 151 ¶ 4.) Plaintiff did not provide copies of any kites or grievances that would demonstrate defendant received or responded

to such grievances or kites. Even if plaintiff wrote grievances or kites to defendant, he has not demonstrated that defendant was responsible for any such medical grievances or kites in light of her declaration to the contrary. Because the evidence does not demonstrate that any ENT specialist appointment was cancelled, or that defendant was responsible for any delay in receiving the ENT appointment, the Court finds that this unresolved dispute of fact is not material. See Matsushita, 475 U.S. at 586 (where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial).

C. Violation of State Regulations Fails to State a Cognizable Claim

Plaintiff also argues that under California law, a non-urgent referral to a specialist must result in an appointment within 15 business days. (ECF No. 39 at 1 (citing Cal. Code Regs. Title 10 § 2240.15).) Defendant points out that section 2240.15 "concerns specific standards for health insurers and plans within California's insurance network," and thus does not apply. (ECF No. 40 at 2.) In any event, section 1983 provides no redress for jail staff's mere violation of state regulations. See Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional right); Sweaney v. Ada Cnty., Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (section 1983 creates cause of action for violation of federal law); Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370-71 (9th Cir. 1996) (federal and state law claims should not be conflated; to the extent the violation of a state law amounts to a deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, section 1983 offers no redress) (quotation marks omitted).

D. Putative Retaliation Claim

In his declaration, plaintiff states that he believes defendant's negligence toward plaintiff started "after [plaintiff] started personally blaming her and grieving her." (ECF No. 39 at 34.) To the extent plaintiff now claims that defendant retaliated against plaintiff by cancelling the ENT specialist appointment, plaintiff's belated claim is unavailing. "Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). A viable retaliation claim in the prison context has five

elements: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). Aside from plaintiff's failure to provide evidence that he filed a grievance against defendant, plaintiff's putative retaliation claim fails in the absence of any adverse action taken by defendant. Plaintiff did not rebut defendant's evidence that she did not have the authority to refer plaintiff to a specialist or to cancel an appointment with a specialist. In addition, no medical evidence was adduced that showed plaintiff's appointment with the ENT specialist was cancelled, and the medical evidence that was provided demonstrates that the ENT referral remained pending, not cancelled. (UDF 11, 14, 18.) The record evidence does not demonstrate that defendant was responsible for the delay in plaintiff seeing the ENT specialist. For all these reasons, it would be futile to grant plaintiff leave to amend to pursue a retaliation claim.

E. Medical Care Provided to Plaintiff Comported With the Standard of Care

Finally, defendant provided the expert medical opinion rendered by Dr. Keiner, who opines that:

> plaintiff's nose complaints were addressed, and were met with appointments and evaluations, as well as appropriate referrals for an ENT consultation. To the extent that there was any delay in receiving the ENT consultation, the delay was neither unusual, nor did it cause [plaintiff] injury, or further injury. Community wait-times for ENT consultations can take several months to complete. Once [plaintiff] was seen by ENT specialist, Dr. Ierokomos, surgery was suggested, but [plaintiff] elected not to proceed with the surgery, because he wanted a second opinion. Follow-up appointments with Dr. Masood, post-ENT consult, further indicate that [plaintiff] advised that he did not want to proceed with the surgery at that time.
>
> It is my opinion, upon review of the medical records, and operative complaint, as well as my knowledge, skill, and experience, that all treatment and care rendered to [plaintiff] by medical staff, to a reasonable degree of medical certainty, conformed with the standard of care, and did not cause [plaintiff's] injuries, or further injury.

(ECF No. 35-4 at 147-48.) Plaintiff failed to rebut Dr. Kiener's expert opinion with competent medical evidence. See Hutchinson v. United States, 383 F. 2d 390, 392-93 (9th Cir. 1988). Therefore, to the extent plaintiff challenges the delay in being seen by the ENT specialist, or the

medical care he received for his nose issues, his claim fails because Dr. Kreiner found that the overall treatment and medical care provided at RCCC for such issues complied with the standard of care.

F. Defendant Is Entitled To Summary Judgment

Accordingly, this Court finds that defendant met her burden to demonstrate there is no genuine dispute as to any material fact. Plaintiff failed to rebut defendant's evidence with competent evidence. Therefore, defendant is entitled to judgment as a matter of law.

VII. QUALIFIED IMMUNITY

In the alternative, defendant claims she is entitled to qualified immunity. (ECF No. 35-1 at 9-10.) Because this Court finds that defendant is entitled to summary judgment on plaintiff's Fourteenth Amendment claim, the Court declines to reach the alternative immunity argument.

VIII. LEAVE TO AMEND

Plaintiff was previously granted leave to amend. This Court has considered whether plaintiff should be granted leave to file a second amended complaint. However, in light of Dr. Keiner's expert medical opinion that the medical care provided to plaintiff for his nose while plaintiff was housed at RCCC in 2022 to 2023 met the standard of care, and because the evidence does not show that an ENT appointment was cancelled, the Court finds it would be futile to grant plaintiff further leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000); Schmier v. U.S. Court of Appeals for the Ninth Circuit, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend).

IX. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 25) be granted, judgment be entered for defendant Gladys Mencias, and this action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: July 21, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/garo2310.msj